IN THE UNITED STATES DISTRICT COURT
                      DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,      )    CASE NO: 8:13CR319
                               )
              Plaintiff,       )
                               )    Omaha, Nebraska
vs.                            )    March 27, 2014
                               )    11:02 a.m.
WESLEY CAMERON and             )
CHARLES MacMILLAN,             )
                               )
              Defendants.      )


               TRANSCRIPT OF MOTION TO SEVER HEARING
                BEFORE THE HONORABLE THOMAS D. THALKEN
                    UNITED STATES MAGISTRATE JUDGE




APPEARANCES:

For the Plaintiff:        Michael Norris
                          Assistant United States Attorney
                          1620 Dodge Street
                          Suite 1400
                          Omaha, NE  68102

For Defendant Cameron:    Deborah Cunningham
                          12020 Shamrock Plaza, Suite 300
                          Omaha, NE  68154

For Defendant MacMillan:  Nathan Lab
                          McGough Law Firm
                          11920 Burt Street, Ste. 100
                          P.O. Box 540186
                          Omaha, NE  68154




Proceedings recorded by electronic sound recording, transcript produced by transcriptionist

March 27, 2014

1
2                    (Whereupon the following proceedings
3                     took place in open court at 11:02 a.m.:)
4                    (Call to Order of the Court.)
5              THE COURT:  We're on the record in United States
6     versus Cameron and MacMillan, carrying the number of 8:13CR319.
7              Counsel enter their appearance for the record,
8     please.
9              MR. NORRIS:  Good morning, Your Honor.  For the
10    United States, I'm Michael Norris.
11             MS. CUNNINGHAM:  Deborah Cunningham representing Wes
12    Cameron, Your Honor.
13             MR. LAB:  Good morning, Judge.  Nathan Lab appearing
14    for Jim McGough on behalf of Charles MacMillan.
15             THE COURT:  We're here on the motions to sever, which
16    is filing number 68 by Mr. Cameron and 69 by Mr. MacMillan.
17             With that in mind, Ms. Cunningham, do you wish to
18    make an opening statement?
19             MS. CUNNINGHAM:  Your Honor, I'll waive opening
20    statement at this time and just acknowledge to the Court that
21    I'm aware of this Court's ruling in a similar case the other
22    day.
23             THE COURT:  Mr. Lab.
24             MR. LAB:  I'd waive, Judge.
25             THE COURT:  Mr. Norris?

1  MR. NORRIS: Your Honor, I'll waive.
2  THE COURT: All right.
3  MR. NORRIS: I do have evidence.
4  THE COURT: All right. First of all, proponent of
5  the motion, do you have evidence you wish to present, Ms.
6  Cunningham?
7  MS. CUNNINGHAM: Your Honor, I'd only be asking that
8  the Court take judicial notice of the indictment which is in
9  the file.
10  THE COURT: All right. That would be a superseding
11  indictment in this case, is that correct? Filing number --
12  MS. CUNNINGHAM: That's correct, Your Honor.
13  THE COURT: Filing number 25. Okay.
14  Mr. Lab, do you have any evidence you wish to present
15  in regard to your motion?
16  MR. LAB: Judge, again, just taking judicial notice
17  -- or request for judicial notice of the indictment, Judge --
18  superseding, excuse me.
19  THE COURT: So ordered.
20  Mr. Norris, do you have evidence you wish to present?
21  MR. NORRIS: I do, Your Honor. I'm going to offer
22  you -- offer to you Exhibit 1 and Exhibit 2. They are what we
23  have related as interface reports. The interface reports
24  relate to the users access, as well as their postings on the
25  board.

1    THE COURT: Very well.

2    MR. NORRIS: And so that's alluded to in my brief.
3    I'm going to offer Exhibits 1 and 2 at this time.

4    THE COURT: Any objections from the Defendant?

5    MR. NORRIS: Your Honor, for the Court's edification,
6    number one -- Exhibit 1 is with regard to newguy689, and that
7    will be Mr. Cameron. And Exhibit 2 is in relation to
8    noonewillknow, and that one will be Mr. MacMillan.

9    THE COURT: Okay. Any objections?

10   MS. CUNNINGHAM: No objection, Your Honor, on behalf
11   of Mr. Cameron.

12   THE COURT: Mr. Lab?

13   MR. LAB: No objections.

14   THE COURT: All right. One and two will be received.

15   MR. NORRIS: And, Your Honor, just as a matter of
16   convenience, I would ask the Court to take judicial notice of
17   the detention hearings in this matter, specifically the
18   postings. Those are going to be included in that interface
19   report, but they may be easier for the Court to find in that
20   fashion than to go through that entire interface report.

21   THE COURT: Very well. So noted.

22   MR. NORRIS: I have no further evidence.

23   THE COURT: All right. Then I will hear counsel as
24   to their motion. First, Ms. Cunningham.

25   MS. CUNNINGHAM: Thank you, Your Honor.

1    As I alluded to in my statement earlier, this Court has rendered an opinion in a similar case, I think the opinion may have come down just yesterday, in which this Court denied severance. And I think at least part of the Court's reasoning may be because that case was a conspiracy case. Other cases in which severance had been allowed were not conspiracy cases, albeit using a same and similar website. I respectfully disagree with the Court's opinion.

    Acknowledging that the Government has charged a conspiracy, I don't think that by alleging a conspiracy it wipes out the issues that are meant to be addressed by severance.

    In this particular case, we have a variety of videos and images which, between these two men, are very different. And I don't think -- in a joint trial I don't think you can ever undo the prejudice that may occur to either of them.

    My Co-defendant, respectfully, at least according to the Government, is viewing what you might loosely call snuff films, or injury to alleged, or virtual injury to children. If that's shown in the trial of Wes Cameron, there's no way I can undo the possible prejudice that's been done.

    In the meantime, these two men don't know each other. They've never met one another. The only thing they did is access the same board. This is the only relationship they have, and in that regard, they're a lot more like the cases

1      where conspiracy was not alleged.

2              Each individual used the same method.  In other
3      words, as far as evidence is concerned, all the Government has
4      to do is -- and it won't take, probably, a great deal of
5      evidence on their part to show that each of these people
6      accessed PedoBook at a date and time.  They did not access it
7      and start accessing it at the same time.  The Government's own
8      evidence shows that Wes Cameron would have accessed that board
9      earlier than the Co-defendant.

10             According to the Government's evidence, there's only
11     one time when they accessed the same image, and I don't think
12     that they can say that they communicated with one another,
13     although I don't want to misspeak for Mr. Norris.  But they
14     certainly -- There's no indication that they know each other.
15     They're not from the same part of the country.

16             Usually the theory of joint trial is why do we put
17     the Government out to have separate trials when the evidence is
18     going to be so vastly similar, especially when it comes to
19     testimony of a variety of possible witnesses or CIs that may
20     have operated all in the same way.  It's just not that way in
21     this case.

22             What we have is each individual, perhaps, commit the
23     same or similar acts to access the board, and then that's the
24     end.  The board itself has a variety of different types of
25     things on the board.  It's sort of like -- A horrible analogy

1  would be that it's like shopping for anything online; once
2  you're in, then there's this whole variety of things that you
3  access. What they access may be vastly dissimilar, and I would
4  say they are vastly dissimilar.

5  There is another opinion that was entered by Judge
6  Bataillon, and I think that it's interesting to look at some of
7  the language in that opinion. One of the things that the judge
8  says in it is that the Government simply alleges that each of
9  the defendants committed a separate crime by similar means,
10 logging onto and viewing different images on the same website.
11 Although those were nonconspiracy cases, that was -- I think
12 it's Cottom and all the progeny, it was like 08, 07, 06, the
13 facts remain the same.

14 The only difference in this particular case is they
15 allege conspiracy this time. And the second difference is
16 these two men are also charged with the advertising count. And
17 I have to tell you how the Government and how law defines
18 advertising is vastly different than the everyday understanding
19 of what advertising is. Basically, all these two did that was
20 perhaps different from the other cases is when they accessed
21 the board, they also accessed a chat room where they would
22 potentially communicate with other anonymous individuals about
23 things that they were looking for. That is defined basically
24 as advertising under the statute. But it still did not bring
25 these two together. There was no agreement between these two

1    that they would together go out and view child pornography on
2    PedoBook. This was something that they -- if they did it, they
3    did it as individuals moving forward and accessing this
4    website.
5         I'd ask that the Court take, perhaps, another look at
6    it, understanding that I don't think that any limiting
7    instruction in the world can correct what may happen. And it
8    isn't -- When I earlier referenced possible themes that the Co-
9    defendant has, this isn't to say my Co-defendant doesn't have
10   problems with some of the themes alleged against my client as
11   being prejudicial to him. It's just that the nature of these
12   themes, which are very different -- and I think that's
13   something that is important here. There is no one issue, one
14   thing that is child pornography. Child pornography encompasses
15   any number of different themes, some of them being extremely
16   alarming, extremely alarming to a jury. And the risk then that
17   you can't undo it in a joint trial, I think, is significant.
18        Thank you.
19        THE COURT: You also raised the Bruton matter, is
20   that right?
21        MS. CUNNINGHAM: I did not.
22        THE COURT: Okay. All right.
23        Mr. Lab.
24        MR. LAB: Thank you, Judge.
25        I believe Ms. Cunningham has succinctly summarized.

|   |   |
|---|---|
| 1 | Our argument is very similar, if not virtually identical |
| 2 | outside of the Bruton issue, which I'll touch upon, so I won't |
| 3 | waste much time with that, except to re-emphasize that the |
| 4 | filing of a conspiracy -- the allegations of a conspiracy, I |
| 5 | don't believe, change the underlying alleged conduct, which |
| 6 | doesn't show any joint activity between these two. |
| 7 | THE COURT: Mr. Lab, you're soft spoken. Have a seat |
| 8 | and pull the mic to you then. |
| 9 | MR. LAB: Yes, Your Honor. |
| 10 | THE COURT: We're not catching you on the -- |
| 11 | MR. LAB: So, again, Judge, our belief that a |
| 12 | conspiracy has been filed or is alleged I don't think changes |
| 13 | or alters the underlying or alleged underlying conduct which |
| 14 | does not demonstrate the joint activity given the separation of |
| 15 | these two that Ms. Cunningham pointed out. |
| 16 | Again, as well, I will also emphasize the |
| 17 | inflammatory nature of the expected statements by the two which |
| 18 | cannot be cured by any limiting instruction due to the extreme |
| 19 | subject matter which it depicts and which they discuss. |
| 20 | As far as the Bruton issue, Your Honor, that is an |
| 21 | issue that admittedly is not the most compelling of those that |
| 22 | we make, but certainly one I believe is viable due to the fact |
| 23 | that although there is no identifiable individual that either |
| 24 | of these two could point out in any pretrial statements, the |
| 25 | basis of this website was anonymity. |

1  THE COURT: With regard to the Bruton matter, do we
2  have some evidence before the Court what statements we have
3  that are -- that would be prejudicial to the other Defendant
4  and so forth? Do we have some -- In other words, we just can't
5  -- the Court just can't assume that, you know, we said there's
6  a Bruton problem. I have to see what the Bruton problem is.
7  MS. CUNNINGHAM: Your Honor, may I --
8  THE COURT: You may confer.
9  MR. LAB: Thank you, Judge.
10  (Counsel conferring.)
11  MR. NORRIS: Your Honor, if it helps, I don't have
12  any objection if they want to supplement the record with
13  exhibits as to each of their client's/Defendant's statements,
14  if they choose to do that.
15  THE COURT: All right. Counsel, what -- do we have
16  -- do we have either taped or written statements or
17  confessions, or however you want to put it --
18  MR. LAB: Judge, there's written statements.
19  THE COURT: All right. By each of the Defendants?
20  MS. CUNNINGHAM: There is, Your Honor.
21  THE COURT: And so if the parties want to provide at
22  the conclusion of the hearing a copy of that, we'll have it --
23  Do you have them with you right now?
24  MS. CUNNINGHAM: I do not.
25  MR. LAB: I do, Judge.

1  THE COURT: We can -- All right. They can be marked
2  as 101 for the Defendant Cameron and 102 for the Defendant
3  MacMillan.
4  And there's just one each, is that correct? All
5  right. And so that can be done immediately before the close of
6  business today, counsel will provide that to the clerk, and
7  there being no objection, they'll be received as evidence for
8  the purposes of this motion.
9  All right. Mr. Lab, you may continue.
10  MR. LAB: Thank you, Judge.
11  There was statements made. Those statements,
12  however, due to the nature of this website, it's built on
13  anonymity. So there's certain statements that although don't
14  directly identify or point the finger at the other, there are
15  statements that there were perhaps conversations or some sort
16  of interaction online with other individuals that are unnamed
17  or unknown to the others.
18  In this situation, although it's, again, not directly
19  identifiable, I believe in a joint trial the jury is going to
20  implicate that it's the other individual that's being talked
21  about based on the anonymity. And if we can't point the finger
22  at someone, if we don't know who that is, we're going to point
23  the finger that's sitting next to the other Defendant in this
24  case. That in somehow those anonymous interactions will
25  unjustly and unfairly be implicated to the other Co-defendant.

So although it's not directly identifiable, I do believe there is still risk of prejudice based on some of those pretrial statements, which are unidentifiable and anonymously given, Judge. That's the basis for our Bruton issue.

THE COURT: All right. Mr. Norris.

MR. NORRIS: Your Honor, one of the cases I omitted from my brief, and kind of unexplicably so, is *United States vs. Kime*, K-i-m-e, and I think the Court's aware of *Kime*. It's frequently been cited as it relates to conspiracies in the Eighth Circuit and the issue of severance.

THE COURT: Citation?

MR. NORRIS: Yes, Your Honor, 99 F.3d 870, and it's an Eighth Circuit case from 1997.

But if you move to the motion to sever section, it indicates "Persons charged with a conspiracy will generally be tried together, especially where proof of the charges against each of the defendants is based on the same evidence and acts. Rarely, if ever, will it be improper for co-conspirators to be tried together."

Both counsel have hit on the fact that these are -- these two are charged with conspiracy. They are charged with conspiracy to advertise, and they are charged with conspiracy to distribute child pornography. It's based upon the same board. It's based upon similar events. I've set forth in my brief, and I won't go ahead and state it into the record, but

the Court is aware from having read the brief that there is a group that they were jointly visiting on that particular board. And now the Court is further aware of some of the statements that they have made.

It is important to note for the Bruton issue that the statements that they are each accused of making are, in all likelihood, not to each other. As a matter of fact, the statements that Mr. MacMillan is concerned about are made to Mr. Defoggi, and vice versa. Mr. MacMillan is talking about the sexual abuse and harm to very young children.

Mr. Cameron has an interest in very young children. As a matter of fact, if you recall from the detention hearing, it's his postings that indicate that he's excited because he's about to have a child, and with that he's going to be able to post abuse photos onto this board. And that's the conspiracy that relates to this particular board is the fact that they're all accumulating on the same place, and they're encouraging each other to not only post comments, but to post material and to have material for everybody to view and look at. So in a nutshell, that is the conspiracy. Conspiracies are to be tried together.

The Bruton issue, I've touched upon, but I covered in my brief, and for all intents and purposes, unless the Court has any questions, I think it's all laid out there, and I don't really plan on covering anything else.

1  THE COURT: Very well.

2  MR. NORRIS: Except I do have a question. I was gone
3  yesterday. I was in Lincoln doing matters. And so when Ms.
4  Cunningham talks about a recent decision, it wasn't Mr.
5  Defoggi, I take it?

6  THE COURT: There's been no ruling on that.

7  MR. NORRIS: I didn't think there was, and I just --

8  THE COURT: There was an argument in that respect.
9  The only rulings in this matter are the ones in 108 and 106;
10 involving 108, Mr. Cottom, et al., and I think it's captioned
11 John Doe, et al. in 106. Those are the two that Judge
12 Bataillon has a memorandum and order on it.

13 MR. NORRIS: Okay. I just want to make sure that I
14 didn't need to correct something.

15 THE COURT: And the distinction that you make in 108
16 and 106 in this case is what?

17 MR. NORRIS: Oh, the distinction between 108 and 106
18 in this particular case?

19 THE COURT: Yes.

20 MR. NORRIS: Is that they're not charged with
21 conspiracies. These two individuals are registered users and
22 registered members on the board who actively post to the board.

23 The distinction between the other two or three boards
24 or board users are that they were able to access the board
25 without being members, without having to register a user name,

and they didn't make -- they did not make any postings, nor did they contribute to the board. They were there visiting the board in order to access and view or to download child pornography without posting anything or otherwise being a member of the board.

THE COURT: All right. Anything further, Ms. Cunningham?

MS. CUNNINGHAM: Only, Your Honor, that I think the very statements made by the Government illustrate the really dangerous content that will be presented by the Government at these trials. I'm not sure, but I believe this runoff was -- it's a Westlaw cite, so I hesitate to even give it to the Court, but I believe it is by -- I think that it is, in fact, your opinion, and it says -- and I'm going to mispronounce the name horribly, but it looks like Defoggi.

THE COURT: Yes.

MS. CUNNINGHAM: It says motion for bill of particulars and motion to sever are denied. I --

THE COURT: That was --

MS. CUNNINGHAM: That's the original, I think.

THE COURT: That was the original. That was not the subsequent --

MS. CUNNINGHAM: Right.

THE COURT: -- the renewed motion to sever.

MS. CUNNINGHAM: Okay.

1  THE COURT: Because there was no objection taken to
2  that order and so forth.
3  MS. CUNNINGHAM: Okay. All right, that explains my
4  confusion, because I was, like, what happened to that order?
5  All right. Nothing further, Your Honor. I'll submit
6  it.
7  THE COURT: All right. Mr. Lab?
8  MR. LAB: No, Judge, nothing further.
9  THE COURT: All right. Let's get these statements in
10 right away, and then the filing of the transcript in this
11 matter, the matter will be deemed submitted.
12 Anything further from the Government?
13 MR. NORRIS: No, Your Honor.
14 THE COURT: Ms. Cunningham?
15 MS. CUNNINGHAM: No, Your Honor.
16 THE COURT: Mr. Lab?
17 MR. LAB: No, Judge.
18 THE COURT: All right. We're in recess. Counsel are
19 excused.
20 (11:23 A.M. -- END OF HEARING)
21
22
23
24
25

INDEX

| EXHIBITS | OFFERED | RULED ON |
|---|---|---|
| 1 - PedoBook Report for Wesley Cameron | 3 | 4 |
| 2 - PedoBook Report for Charles MacMillan | 3 | 4 |
| 101 - Statement of Wesley Cameron | 11 | 11 |
| 102 - Statement of Charles MacMillan | 11 | 11 |

TRANSCRIBER'S CERTIFICATE

I, a court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated this 31st day of March, 2014.

/s/ *Diana Wilkey*
Transcriber